## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CAESAR WHITE, JR,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:22-00106-N** |
| | ) | |
| **LOUIS DeJOY,** | ) | |
| *Postmaster General,* | ) | |
| *United States Postal Service,* | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

This civil action is before the Court on the "Motion for Summary Judgment" under Federal Rule of Civil Procedure 56 (Doc. 58), with separate supporting evidentiary material (Docs. 56, 57), filed May 30, 2023, by the Defendant, U.S. Postmaster General Louis DeJoy; the response brief (Doc. 67) in opposition to said motion filed by the Plaintiff, Caesar White, Jr; and the Postmaster General's brief in reply (Doc. 73) to the response, with separate supporting evidentiary material (Doc. 72).[1]

By order entered March 29, 2024, the Court granted the Postmaster General's motion for summary judgment as to all claims and causes of action, noting that a "separate memorandum opinion setting out the Court's reasoning on this ruling will be entered as soon as is practicable, after which final judgment will forthwith issue

---

[1] With the consent of the parties, this action has been referred to the undersigned Magistrate Judge to conduct all proceedings in this action, including trial; to order entry of final judgment; and to conduct all post-judgment proceedings, in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and S.D. Ala. GenLR 73. (*See* Docs. 22, 23).

by separate document in accordance with Federal Rule of Civil Procedure 58." (Doc. 74). This document constitutes that "separate memorandum opinion setting out the Court's reasoning" in granting summary judgment for the Postmaster General.

## I.      Procedural Background

White, at all times proceeding without counsel (*pro se*), initiated this civil action by filing a complaint with the Court on March 8, 2022. *See* (Doc. 1); Fed. R. Civ. P. 3. The complaint asserts claims for discrimination, retaliation, and harassment under the "federal-sector" provisions of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"), and under the Rehabilitation Act of 1973, arising out of White's employment as a letter carrier with the United States Postal Service in Mobile, Alabama.[2]  The Postmaster General served an answer to the complaint on August 16, 2022. (*See* Doc. 18).[3] The parties subsequently filed a report of their planning meeting held under Federal Rule of Civil Procedure 26(f) (Doc. 21), and the Court entered a scheduling order under Federal Rule of Civil Procedure 16(b) on October 7, 2022 (*see* Doc. 28), under which discovery closed on April 28, 2023, and dispositive pretrial motions were due May 30, 2023.[4] The present motion for summary judgment was

---

[2] As was explained by prior order, "the Postmaster General, currently Louis DeJoy, is the only proper defendant to White's complaint." (Doc. 11, PageID.36).

[3] With the Court's leave, White later amended the complaint solely to add a demand for punitive damages. (*See* Docs. 32, 41).

[4] *See* Fed. R. Civ. P. 16(b)(3)(A) ("The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.").

timely filed.[5]

## II.    Summary Judgment Legal Standards

"A party may move for summary judgment, identifying each claim or defense-
-or the part of each claim or defense--on which summary judgment is sought. The
court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it might affect the outcome
of the suit under governing law and it is 'genuine' if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd.
v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013) (quotations omitted). "As
to materiality, the substantive law will identify which facts are material. Only
disputes over facts that might affect the outcome of the suit under the governing law
will properly preclude the entry of summary judgment. Factual disputes that are
irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"Summary judgment is only appropriate if a case is 'so one-sided that one party
must prevail as a matter of law.' " *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227,
1235 (11th Cir. 2016) (quoting *Anderson*, 477 U.S. at 251-52) (citation omitted).
However, a " 'mere scintilla' of evidence is insufficient; the non-moving party must
produce substantial evidence in order to defeat a motion for summary judgment."

---

[5] White also timely filed a motion for summary judgment (Docs. 60, 63). The Court
denied that motion on June 7, 2023. (*See* Doc. 62).

*Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) (per curiam). In other words, "there must be enough of a showing that the jury could reasonably find for that party … Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quotations omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration adopted) (quotations omitted)). *See also Allen*, 121 F.3d at 646 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (quotations omitted)); *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 n.3 (11th Cir. 1996) ("In determining the facts for summary judgment purposes, we, like the district court, are required to view the evidence in the light most favorable to the plaintiff. When that is done, a pure issue of law is created."). "The Court 'must avoid weighing conflicting evidence or making credibility determinations.' " *Ave. CLO Fund*, 723 F.3d at 1294 (quoting *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000)). However, " 'an inference based on speculation and conjecture is not reasonable.' " *Id.* (quoting *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985)).

"Where … the non-moving party bears the burden of proof on an issue at trial, the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support its case, or present 'affirmative evidence

demonstrating that the nonmoving party will be unable to prove its case at trial.' " *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc)). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). "For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.' " *Hammer*, 20 F.3d at 1141 (quoting *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993)).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Four Parcels of Real Prop.*, 941 F.2d at 1438 (citations and quotations omitted). *Accord, e.g.*, *Baker v. Upson Regional Medical Center*, No. 22-11381, 2024 WL 1003534, at *4 (11th Cir. Mar. 8, 2024) (per curiam).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Allen*, 121 F.3d at 646 (quotation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Id.* (quotation omitted). "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015) (citing *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.")). Importantly, a district court is only required to consider "the cited materials" when deciding a summary judgment motion, Fed. R. Civ. P. 56(c)(3), and "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts…[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (habeas corpus proceedings), and " '[t]here is no burden upon the district court to distill every

potential argument that could be made based on the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)).[6]

## III. Analysis

As alleged in the complaint, White's claims in this action are based on events underlying charges he submitted to the U.S. Equal Employment Opportunity Commission's Office of Federal Operations in matter 4G-350-0047-18 (hereinafter, "the 2018 Case") (which White alleges "was initially noted as 4G-350-0187-17") and matter 4G-350-0159-19 (hereinafter, "the 2019 Case"). (*See* Doc. 1 ¶ 1, PageID.1).[7] White's allegations underlying his claims are as follows:

---

[6] *Pro se* filings such as White's are to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation omitted). Moreover, "[d]espite construction leniency afforded *pro se* litigants, [courts] have required them to conform to procedural rules." *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) (per curiam). *See also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (*pro se* litigants are "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure"). Of particular relevance here, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

[7] "A federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action[,]" *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999), or a Rehabilitation Act claim, *see Gaillard v. Shinseki*,

On or about August 2017, I was not allowed to work because of attempting to go to scheduled doctor's appointments, and was unjustly written up in the proceeding months for attempting to do so, I was written up numerous times unjustly claiming performance issues, and subjected almost daily to a hostile work environment, targeted for adverse working conditions by use of younger workers, and subjected to unfavorable working conditions to cause further harm to my medical condition…On or about September 2017, I filed a complaint with the USPS EEO counselor relating to working conditions, hostile work environment, and retaliation as well. These conditions continued thru [sic] until January of 2020, which led to the subsequent EEOC filing noted in the beginning of th[e] complaint. During this time frame, I was a member of a protected group of person(s) and between the ages of 40 and 70; I was subjected to numerous unjustified write ups, which were overturned; younger workers were use [sic] to do my work for me; and I was quailed to perform my own work load as all other employees; I suffered loss of salary, loss of 401 investment pay, lost [sic] of sick and personal leave time, and had my credit ruined by the Defendants [sic] action, which has severely damaged my ability to take care of myself. And as a result of the Defendants [sic] hostile and fraudulent actions…I do not feel safe under their supervision!!!

(*Id.* ¶¶ 4-5, PageID.2-3).

In his motion for summary judgment, the Postmaster General describes White's claims arising out of the 2018 Case as follows:

---

349 F. App'x 391, 392 (11th Cir. 2009) (per curiam) (unpublished) ("A plaintiff asserting a private right of action under the Rehabilitation Act must satisfy the exhaustion of administrative remedies requirement in the manner prescribed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–5, 16, 29 U.S.C. § 794a; Doe v. Garrett, 903 F.2d 1455, 1459–60 (11th Cir.1990)."). A federal employee does not have to exhaust administrative remedies to bring an ADEA claim, but nevertheless "may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5, 111 S. Ct. 1562, 114 L. Ed. 2d 1 (1991).

In the 2018 Case, White alleged that his manager, Oscar Naylor subjected him to a hostile work environment based on age, disability, and retaliation (prior EEO activity), when:

Claim #1: On or about August 9, 2017, he was denied Family Medical Leave (FMLA) coverage;

Claim #2: On August 9, 2017, through August 19, 2017, he was placed off the clock in an off-duty without pay status;

Claim #3: On or about August 29, 2017, he was issued a 14-day no-time off suspension;

Claim #4: On December 9, 2017, he was placed off the clock;

Claim #5: On December 11, 2017, management would not accept his documentation returning him to work;

Claim #6: On or about February 7, 2018, he was issued a 7-day suspension;

Claim #7: On September 13, 2017, October 25, 2017, November 22, 2017, January 4, 2018, January 26, 2018, February 26, 2018, March 8, 2018, April 12-13, 2018, April 25, 2018, and May 7, 2018, he was instructed to leave work prior to the end of his 8-hour shift;

Claim #8: On date(s) to be provided, after submitting PS Form 3996, Carrier Auxiliary Control, forms, his manager made unacceptable comments and threatened him;

Claim #9: On date(s) to be provided, he received disciplinary action; and

Claim #10: On May 17, 2018, after submitting two PS Forms 1767, Report of Hazard, Unsafe Condition or Practice, he failed to receive a copy or response.

(Doc. 58, PageID.1276 (citing Doc. 56-1, PageID.313-314, 384)).[8]

---

[8] The Court will hereinafter cite these claims as "2018 Claim #1," "2018 Claim #2," etc.

White's claims arising out of the 2019 Case are described as follows:

[I]n the 2019 Case, White alleged that Naylor, Supervisor, Customer Services, Ionut Corbu, and Postmaster Paul Birge subjected White to discriminatory harassment based on race, reprisal (prior EEO activity), disability, and age, when:

Claim #1: On April 17, 2019, and ongoing, he was denied light duty work and subsequently charged annual and sick leave;

Claim #2: On June 26, 2019, he was put on Emergency Placement;

Claim #3: On November 27, 2019, he was put on Emergency Placement in an off- duty status until November 30, 2019, and charged sick leave and LWOP for the days he was off;

Claim #4: On December 11, 2019, he was issued a Letter of Warning;

Claim #5: On December 6 and 10, 2019, management refused to schedule a medical appointment for him related to his on-the-job injury; and

Claim #6: On October 2, 4, 5; November 2, 4, 25; and December 13, 14, 16, 18, 24, and 26, 2019, he had work hours taken away in favor of younger coworkers.

(*Id.*, PageID.1277 (citing Doc. 57-1, PageID.757, 816, 810)).[9]

White's response states that he "agrees" with the Postmaster General's statement of most of these, and does not substantively contest the others apart from disagreeing over minor factual details. White also does not argue that the Postmaster General's motion fails to address any other claims or causes of action alleged in the complaint.[10] Accordingly, the Postmaster General's motion for summary judgment is

---

[9] The Court will hereinafter cite these claims as "2019 Claim #1," "2018 Claim #2," etc.

[10] White's response claims that the Postmaster General "still refuses to acknowledge

considered to target all of White's claims asserted in this action. *See Solutia, Inc.*, 672 F.3d at 1239 ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned" (quotation omitted)).[11]

While White contests many of the Postmaster General's factual assertions, and makes many of his own, in his response brief opposing the present motion for summary judgment, White did not submit any new evidence with that brief, and the brief itself is largely bereft of specific citations to other record evidence. As White was informed when the Court previously denied his motion for summary judgment:

> "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Under the Court's local rules, a summary judgment movant is required to support each statement of fact "by a *specific, pinpoint* citation to the record…" S.D. Ala. CivLR 56(a) (emphasis added).

---

the initial filing and contact with the EEO concerning the matter before the Court, which is 4G-350-0187-17, and until this date, no one seems able to provide any documented information about that matter, which was the original start date for 4G-350-0047-18, which was later changed too!" (Doc. 67, PageID.1908). However, White has not asserted any claims purportedly arising out of matter 4G-350-0187-17, nor has he explained how the Postmaster General's purported failure to produce information regarding that matter has prevented him from bringing additional claims in this action.

[11] Regardless, even if the Postmaster General's statement of the claims is incomplete, White has utterly failed to present substantial evidence showing that any action taken against him was motivated by an impermissible factor under any of the statutes he invokes, as will be explained.

Here, while White has submitted over 500 pages of documentary exhibits in support of his motion for summary judgment, his motion fails to provide "specific, pinpoint" citations to "particular parts of the record" that provide factual support for each of the "essential elements" of his claims. Merely providing a list and general description of his exhibits in a discrete section of his brief is insufficient. A court is only required to consider "the cited materials" when deciding a summary judgment motion, Fed. R. Civ. P. 56(c)(3), and "[m]aking district courts dig through volumes of documents and transcripts would shift the burden of sifting from petitioners to the courts … [D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added).

(Doc. 65, PageID.1903-1904).

That order was entered, and a copy mailed to White, on June 2, 2023, well before the July 18, 2023 deadline for White to respond to the Postmaster General's motion for summary judgment. (*See* Doc. 66). Thus, White was made well aware of what the Court expected from him with regard to briefing on summary judgment, and had ample time to prepare his response with those principles in mind.[12] White, however, appears to have made little effort to do so.

Moreover, White's brief itself is not in the form of either a sworn affidavit or an unsworn declaration that substantially complies with 28 U.S.C.§ 1746. *See Roy v.*

---

[12] The undersigned also notes that White was familiar with summary judgment procedures prior to filing this action, having previously litigated summary judgment motions *pro se* in *White v. DeJoy*, S.D. Ala. Case No. 1:19-cv-116-TFM-B.

*Ivy*, 53 F.4th 1338, 1347-48 (11th Cir. 2022) (explaining how affidavits and § 1746 declarations may be used on summary judgment). Thus, any assertion of fact made in that brief is not "evidence" for purposes of summary judgment. *See id.* at 1347 ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment. An unsworn statement is incompetent to raise a fact issue precluding summary judgment." (citation omitted) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003))); *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) ("[A] sentence in an unsworn brief is not evidence.").

## A. Untimely/Unexhausted Claims

White asserted in 2018 Claim #1 that he was denied coverage under the Family and Medical Leave Act (FMLA) on or about August 9, 2017. The EEOC dismissed 2018 Claim #1 at the administrative level because "the enforcement of the Family Medical Leave Act is committed by law to the U.S. Department of Labor…" (Doc. 56-1, PageID.315).[13] As the Postmaster General correctly notes, an employee claiming an FMLA violation "has the choice of: (1) Filing, or having another person file on his or her behalf, a complaint with the Secretary of Labor, or (2) Filing a private lawsuit pursuant to section 107 of FMLA." 29 C.F.R. § 825.400(a). "If the employee files a private lawsuit, it must be filed within two years after the last action which the

---

[13] *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1123 n.9 (9th Cir. 2001) ("Congress authorized the Department of Labor to promulgate regulations implementing the FMLA." (citing 29 U.S.C. § 2654)); 29 C.F.R. §§ 1614.103(a) (setting out the statutes for which the EEOC can investigate complaints of violations made by federal employees, which do not include the FMLA), 1614.107(a)(1) ("Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint[ t]hat fails to state a claim under § 1614.103…").

employee contends was in violation of the Act, or three years if the violation was willful." *Id.* § 825.400(b). White initiated this suit on March 8, 2022, well over 3 years after he claims he was denied FMLA coverage in August 2017.[14] Accordingly, summary judgment is due to be **GRANTED** in favor of the Postmaster General on 2018 Claim #1 because it was not timely brought.

The Postmaster General argues that certain other claims are due to be dismissed because White failed to timely initiate EEOC administrative review for them.

> The remedies, procedures, and rights of Title VII are available to plaintiffs filing complaints under the Rehabilitation Act. 29 U.S.C. § 794a(a)(1).
>
> Under Title VII and the Rehabilitation Act, federal employees are required to initiate administrative review of any alleged discriminatory or retaliatory conduct with the appropriate agency within 45 days of the alleged discriminatory act. *See id.*; 42 U.S.C. § 2000e–16(b); 29 C.F.R. § 1614.105(a)(1); *see also Mullins* [*v. Crowell*], 228 F.3d [1305,] 1310–11 [(11th Cir. 2000)] (applying the 45–day exhaustion requirement to federal employees raising claims under the Rehabilitation Act). When the discriminatory act results in a personnel action, the employee must

---

[14] In addressing the Postmaster General's articulation of this claim, White asserted: "Not only was the Plaintiff denied light duty work and subsequently charged annual and sick leave, but the plaintiff was also charged with Leave without pay too or 'LWOP' time, which the Defendants refused to provide pay stubs print outs for the time period of April 17 through August 1, 2019, for the Plaintiff as requested during the discovery period…" (Doc. 67, PageID.1908-1909). These additional complaints appear to correspond with FMLA violations, possibly occurring as late as August 1, 2019. However, White alleged no FMLA violations in his complaint. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam). Moreover, White has alleged no facts indicating that these alleged violations were "willful" so as to be entitled to the 3-year limitations period in bringing this claim.

contact an EEO counselor "within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1)...Generally, when the claimant does not initiate contact within the 45–day charging period, the claim is barred for failure to exhaust administrative remedies.

*Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (per curiam).

Specifically, the Postmaster General asserts that 2018 Claim #2, 2018 Claim #3, and part of 2018 Claim #7 are time-barred because he did not contact an EEO counselor until December 9, 2017. The Postmaster General cites the same two exhibit pages in support for each claim, but neither of those two pages clearly supports that EEO contact for any of the aforementioned claims was untimely. (*See* Doc. 58, PageID.1315, 1317, 1320, *respectively citing id.* ¶¶ 14, 27-28, 51, PageID.1279, 1282, 1287, *in turn each citing* Doc. 56-1, PageID.286 and Doc. 56-3, PageID.715). The first exhibit page cited is to an EEO ADRS Inquiry Report about incidents occurring December 9 and 11, 2017, in which White claimed retaliation "when 1) on 12/9/2017 he was made ill; 2) he was sent home and 3) on 12/11/2017 his documentation was not accepted." (Doc. 56-1, PageID.286). The other cited page is part of a table indicating that "initial EEO Contact" was made on "12/09/2017" for unspecified incident(s). (Doc. 56-3, PageID.715). The Postmaster General has failed to meet his burden of showing no genuine issue of material fact that White did not timely initiate EEO counseling for these claims.

## B. Substantive Merits

The ADEA provides, in relevant part: "All personnel actions affecting employees...who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States)...in the United States Postal

Service and the Postal Regulatory Commission…shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Title VII similarly states that such personnel actions "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).

In addressing § 633a(s), the Supreme Court has interpreted the phrase "made free from any discrimination based on age" to not require a showing that "age is a 'but-for cause' of the personnel action in question[,]" but rather as "demand[ing] that personnel actions be untainted by any consideration of age. This does not mean that a plaintiff may obtain all forms of relief that are generally available for a violation of § 633a(a), including hiring, reinstatement, backpay, and compensatory damages, without showing that a personnel action would have been different if age had not been taken into account. To obtain such relief, a plaintiff must show that age was a but-for cause of the challenged employment decision. But if age discrimination played a lesser part in the decision, other remedies may be appropriate." *Babb v. Wilkie* *("Bab I")*, 589 U.S. 399, 402, 140 S. Ct. 1168, 206 L. Ed. 2d 432 (2020). In short, "age must be the but-for cause of *differential treatment*, not…a but-for cause of the *ultimate decision*." *Id.* at 408. The Eleventh Circuit has recognized that, "[b]ecause the relevant statutory provisions of the ADEA and Title VII are essentially identical, the *Babb* [*I*] Court's interpretation of the ADEA's phrase "personnel actions ... shall be made free from any discrimination based on" must control [Title VII's federal-sector provision], too." *Babb v. Sec'y, Dep't of Veterans Affs.* ("*Babb II*"), 992 F.3d 1193, 1199-2000 (11th Cir. 2021). Thus, under the federal-sector antidiscrimination

provisions of both Title VII and the ADEA, "[s]o long as the protected characteristic is 'the but-for cause of *differential treatment*,' then it doesn't matter (for purposes of liability) that the protected characteristic isn't 'a but-for cause of *the ultimate decision*.'" *Id.* at 1205 (quoting *Babb I*, 589 U.S. at 408).

Additionally, the phrase "any discrimination" as used in those provisions has been interpreted to include retaliation for filing charges of, or otherwise complaining about, discrimination under those statutes. *See id.* at 1203 (citing *Porter v. Adams*, 639 F.2d 273, 277–78 (5th Cir. Unit A Mar. 1981) [15] (Title VII federal-sector provision), and *Gomez-Perez v. Potter*, 553 U.S. 474, 488, 128 S. Ct. 1931, 170 L. Ed. 2d 887 (2008) (ADEA federal-sector provision)). "[A] plaintiff alleging retaliation must first establish a prima facie case by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009). *See also Fortner v. Brennan*, No. 22-13688, 2023 WL 8813574, at *2 (11th Cir. Dec. 20, 2023) (per curiam) (unpublished) (applying *Bryant*'s prima facie retaliation case to federal-sector Title VII claim).

---

[15] On "October 1, 1981 pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995, … the United States Court of Appeals for the Fifth Circuit was divided into two circuits, the Eleventh and the 'new Fifth.'" *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). "The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981." *Smith v. Shook*, 237 F.3d 1322, 1325 n.1 (11th Cir. 2001) (per curiam).

" 'The [Rehabilitation] Act prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability.' " *Shiver*, 549 F.3d at 1344 (quoting *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000)). "Discrimination claims under the Rehabilitation Act are governed by the same standards used in [Americans with Disabilities Act] cases…" *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). The elements of a disability discrimination claim under the Rehabilitation Act "are (1) an individual has a disability; (2) the individual is otherwise qualified for the position; and (3) the individual was subjected to unlawful discrimination as the result of his disability." *Mullins*, 228 F.3d at 1313. The Rehabilitation Act also incorporates the ADA's anti-retaliation provision, which is similar to Title VII's anti-retaliation provision. *Burgos v. Chertoff*, 274 F. App'x 839, 843 (11th Cir. 2008) (per curiam) (unpublished).

Generally, "[a] hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)). "[A] plaintiff wishing to establish a hostile work environment claim show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as [race]; (4) that the harassment was sufficiently severe or pervasive

to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Id.* However, "Title VII [also] prohibits the creation of a hostile work environment in retaliation for an employee's engagement in protected activity." *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021). Unlike "substantive" hostile work environment claims, which are analyzed under the "severe or pervasive" standard, *see supra*, "retaliatory hostile work environment claims, like retaliation claims based on discrete acts, prevail if the conduct complained of 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id.* at 836 (quoting *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 862-63 (11th Cir. 2020) (per curiam)). The Eleventh Circuit has assumed, without deciding, that hostile work environment claims are cognizable under the ADEA and the Rehabilitation Act, and that the elements of a hostile work environment claim under either of those Acts are the same as one under Title VII. *See Coles v. Post Master Gen. United States Postal Servs.*, 711 F. App'x 890, 898 (11th Cir. 2017) (per curiam) (unpublished) (ADEA); *Litman v. Sec'y, of the Navy*, 703 F. App'x 766, 771 (11th Cir. 2017) (per curiam) (unpublished) (ADEA and Rehabilitation Act).

The undersigned need not parse the remainder of White's claims. While White spends much of his response brief quibbling over the technical accuracy of the Postmaster General's statements of fact, he fails to cite substantial record evidence indicating that he was discriminated against, retaliated against, or harassed during

any of the underlying events <u>based on a protected characteristic or activity</u> under any of the statutes by which he is suing. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."); *Tonkyro*, 995 F.3d at 837 ("a plaintiff must show that the [challenged] actions were based on her sex [or other protected characteristic] rather than some other unprotected characteristic"); *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010) ("Alvarez's burden is to show not just that Royal Atlantic's proffered reasons for firing her were ill-founded but that unlawful discrimination was the true reason."). On this basis, summary judgment is due to be **GRANTED** in favor of the Postmaster General on all of White's other claims and causes of action.

Federal anti-discrimination statutes are not to be treated as "a general civility code." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998). Their protections "do not extend to everything that makes an employee unhappy[,]" *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1242 (11th Cir. 2001) (quotation marks omitted), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)), or to "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (quotation omitted). *See also Tonkyro*, 995 F.3d at 837 ("'Title VII does not prohibit profanity

alone, however profane ... [nor] harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex.'" (quoting *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301–02 (11th Cir. 2007)).

Nor do they allow "plaintiffs simply to litigate whether they are, in fact, good employees." *Rojas v. Fla.*, 285 F.3d 1339, 1342 (11th Cir. 2002) (per curiam). Courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets Of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). "We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Alvarez*, 610 F.3d at 1266 (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)). "That is true no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers." *Id.* (quotation omitted).[16]  A plaintiff's "subjective conclusion that [he was harassed or discriminated

---

[16] *See also Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated on other grounds by Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc) ("Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules…Nor does the statute require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."); *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1399 (7th Cir. 1997) ("The true reason for the action of which the plaintiff is complaining

against], without supporting evidence, [i]s insufficient…'[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions.' " *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989) (quoting *Young v. Gen. Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988)).

It is apparent that White has a contentious relationship with his supervisors and other superiors, and that he believes he is being treated unfairly at his job. But as explained above, neither Title VII, the ADEA, nor the Rehabilitation Act guarantees White a pleasant working environment, and he has not pointed to substantial evidence suggesting that any of it is due to a protected characteristic or activity. White has identified several "white employees" that he conclusorily claims were treated differently than him, but he fails to provide any supporting details about the supposed disparate treatment, or how White is sufficiently similar to any of those individuals apart from race. *See Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (To establish a *prima facie* case of discriminatory disparate treatment, generally "the plaintiff must present evidence of a comparator—someone who is 'similarly situated

---

might be something embarrassing to the employer, such as nepotism, personal friendship, the plaintiff's being a perceived threat to his superior, a mistaken evaluation, the plaintiff's being a whistleblower, the employer's antipathy to irrelevant but not statutorily protected personal characteristics, a superior officer's desire to shift blame to a hapless subordinate[,] or even an invidious factor but not one outlawed by the statute under which the plaintiff is suing; or the true reason might be unknown to the employer; or there might be no reason." (cited favorably by *Alvarez*, 610 F.3d at 1266-67)).

in all material respects.' " (quoting *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc))). Similarly, White's unsworn statements generally averring that his supervisors allowed younger employees to do his work or treated younger employees better than him are bereft of any supporting detail, making these statements no more than White's "subjective conclusions" that he is being discriminated against because of his age, which are insufficient on summary judgment. The few pages of deposition transcript that White has cited fare no better, as for the most part they simply point to coworkers' subjective conclusions that certain events were "discriminatory" or "harassing."

White spends a great deal of his response brief complaining that the Postmaster General failed to produce various records during discovery. "As a general rule summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery." *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989) (per curiam). Here, however, White was given a full opportunity to conduct discovery. The Rule 16(b) scheduling order, entered October 7, 2022, set an April 28, 2023 deadline for completion of all discovery—only two days shorter than the discovery deadline the parties requested in their joint Rule 26(f) planning report (*compare* Doc. 28 § 4, PageID.113, *with* Doc. 21 ¶ 4(d), PageID.90), and over a month before the May 30, 2023 deadline for motions for summary judgment and other dispositive pretrial motions. (*See* Doc. 28 § 11, PageID.120). White never moved to extend the discovery completion deadline, but even after the close of discovery the Court gave White the opportunity to file, by June

27, 2023, "a renewed motion to compel identifying, *with specificity*, any discovery he believes the Defendant has unjustifiably failed to disclose under Fed. R. Civ. P. 26(a), and/or to produce in response to a discovery request under the Federal Rules of Civil Procedure." (Doc. 61, PageID.1354). White, however, filed no such motion in response to that invitation, instead waiting until July 18, 2023, to complain about the Postmaster General's purported deficiencies in his response brief to the present motion for summary judgment.

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." As noted previously, however, White did not present any additional affidavits or declarations with his response brief, and the brief itself is not sworn or in the form of an unsworn declaration. Particularly since White was given the opportunity to file a renewed motion to compel several weeks before his response brief was due, the Court will not excuse White's failure to support his claims of needing additional discovery with an affidavit or declaration. *See Wallace v. Brownell Pontiac-GMC Co.*, 703 F.2d 525, 527 (11th Cir. 1983) (interpreting a prior version of Rule 56(d) then found at Rule 56(f): "In the instant case, the Wallaces did not comply with Fed. R. Civ. P. 56(f). Instead, they relied on their motions to compel discovery and to strike the Farley affidavit and their response to the motion for summary judgment. Although rule 56(f) is infused with a spirit of liberality, a trial court is

under no obligation to treat such motions and responses as satisfying the requirements of subsection (f).").

Moreover, even if the Court were inclined to excuse that failure, White has failed to show with any kind of specificity how any of the purported outstanding discovery would enable him to withstand the Postmaster General's motion. "The party seeking to use rule 56[(d)] " 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts,' but rather he must specifically demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.' " *Reflectone, Inc.*, 862 F.2d at 843 (quoting *Wallace*, 703 F.2d at 527 (quoting *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896 (5th Cir. 1980))).

**DONE** this the **9**th day of **April 2024**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**